**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Case No. 1:26-cr-21 |
| MATTHEW BECKER, | ) ) | |
| *Defendant.* | ) ) ) | |

## RESPONSE TO GOVERNMENT'S OMNIBUS MOTION

COMES NOW, the defendant, by and through counsel, and respectfully responds to the government's omnibus motion. The government's motion raises five discrete issues. In further support of this response, counsel avers as follows:

I.       Defining Reasonable Doubt

The defense will address this issue at oral argument in the pre-trial conference.

II.      Jury Nullification

The defense maintains its previously made positions regarding this issue. Counsel will further address the government's arguments at the pre-trial conference.

III.     Investigation of Minor

This motion is premature and cannot be granted until the government's evidence comes in at trial. While we agree that the investigation is irrelevant to most of the government's case, it is not irrelevant if the mother of the victim testifies. Records reflect that she was involved in dealing with the original case against him, including the government's suggestions of leniency and the government's efforts to obtain cooperation. The investigation is plainly relevant to issues of bias

and credibility, if the government elects to call her as a witness.

IV.     Federal Rule of Evidence 412.

The government asks the Court for a ruling barring the defense from introducing evidence in violation of the federal rules.  In its motion, the government simply states "the government believes that part of the defense strategy at trial may be to attack the victim."  However, the government does not identity in its motion what evidence with which it is concerned specifically. Counsel cannot guess what the government has in mind.  In any event, the defense agrees to follow the federal rules and otherwise act lawfully.

V.     <u>Records Admissibility</u>

In its motion, the government seeks the admission of varying records without a custodian of record.  Under Fed. R. Evid. 902(11), the records must satisfy three tests in order to be admissible.

1. <u>The certification must comply with "a federal statute or a rule prescribed by the Supreme Court."</u>

First, the certification must comply with the "a federal statute or a rule prescribed by the Supreme Court."  Ordinarily, the "declaration under these rules [is] supplied in compliance with 28 U.S.C. § 1746." *United States v. Forty-Febres*, No. CR 16-330 (ADC), 2018 WL 2182653, at *1 (D.P.R. May 11, 2018), *aff'd,* 982 F.3d 802 (1st Cir. 2020).  A record without this declaration is inadmissible. *See, e.g. Stair v. Calhoun*, No. 12-CV-6121 SJF SIL, 2015 WL 1966345, at *1 (E.D.N.Y. May 1, 2015) ("plaintiff's unsworn declaration is not subscribed by him to be "true under penalty of perjury" as required by 28 U.S.C. § 1746. . . "Inclusion of the language 'under penalty of perjury' is an integral requirement of the statute for the very reason that it impresses upon the declarant the specific punishment to which he or she is subjected for certifying to false

statements[,]" *id.,* and omission of that phrase would "allow the affiant to circumvent the penalties for perjury in signing onto intentional falsehoods." *Id.* (quotations, brackets and citation omitted)); *Rhoads v. Virginia-Fla. Corp.*, 476 F.2d 82, 86 (5th Cir. 1973) ("The certification itself lacked the necessary verification to be admissible as a hearsay exception. Without statutory authorization it could not provide verification for the document on which it appeared."); *United States v. Spitz*, 83 M.J. 720, 722 (A. Ct. Crim. App. 2023) ("Military Rule of Evidence 902(11) requires, among other things, the certification to "compl[y] with a federal statute or a rule prescribed by the Supreme Court[.]" The Advisory Committee notes for the corresponding Federal Rule states "[a] declaration that satisfies 28 U.S.C. § 1746 would satisfy the declaration requirement of Rule 902(11) . . . An unsworn certificate, executed within the United States, must substantially include, "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)." 28 U.S.C. § 1746(2). The government's unsworn self-authentication certificate lacked this declaration; for this reason, it did not meet the attestation requirements of Mil. R. Evid. 902(11)"). *Ed-George v. Burns*, No. 1:09CV0869GTS/DRH, 2009 WL 2957796, at *2 (N.D.N.Y. Sept. 8, 2009) (no "case stands for the proposition that the declarant need not use the words, 'under penalty of perjury'; to the contrary, both cases hold that such words are *required* by 28 U.S.C. § 1746.) (citing *Wada,* 101 F.Supp.2d at 1323; *Ty, Inc.,* 1994 WL 36880, at *2.) (emphasis in original).

    2.   <u>It must be the "standard practice to verify the information provided."</u>

Second, the records themselves must be "properly understood as records of a regularly conducted activity under Rule 803(6), such that they qualify for self-authentication under Rule 902(11)." *United States v. Browne*, 834 F.3d 403, 409 (3d Cir. 2016) (finding social media records are "not business records under Rule 803(6) and thus cannot be authenticated by way of Rule

902(11)." This is so because

> Rule 803(6) is designed to capture records that are likely accurate and reliable in content, as demonstrated by the trustworthiness of the underlying sources of information and the process by which and purposes for which that information is recorded. *See E.C. Ernst, Inc. v. Koppers Co.*, 626 F.2d 324, 330–31 (3d Cir. 1980) (holding that pricing sheets satisfied Rule 803(6) because, among other things, "the sheets were checked for accuracy"); *see also United States v. Gurr*, 471 F.3d 144, 152 (D.C. Cir. 2006) ("Because the regularity of making the record is evidence of its accuracy, statements by 'outsiders' are not admissible for their truth under Fed. R. Evid. 803(6)."); Fed. R. Evid. 803 advisory committee's note (1972) ("The element of unusual reliability of business records is said variously to be supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation.").

*Browne*, 834 F.3d 403at 410 (3d Cir. 2016)[1]

Where records contain unverified substantive content, the government must instead "present[] sufficient extrinsic evidence to authenticate the chat logs under Rule 901(a)."); *accord B.R. v. F.C.S.B.,* 710 F. Supp. 3d 528, 535 (E.D. Va. 2024) ("other courts have rejected the argument that Facebook messages could be self-authenticating under other portions of Rule 902" and citing *Browne* as "rejecting argument that Facebook messages were self-authenticating under Rule 902(11) where the relevance was on fact of authorship, but referring to testimony of participants as establishing authenticity under Rule 901").

3. The record must "meet[] the requirements of Rule 803(6)(A)-(C)."

Finally, the certification must "meet[] the requirements of Rule 803(6)(A)-(C)." These requirements were spelled out with alacrity in *Rambus, Inc. v. Infineon Techs. AG*, 348 F. Supp.

---

[1] The Court in a footnote in that paragraph that "[I]t is sufficient if it is shown that ... [the] standard practice was *to verify the information provided*, or that the information transmitted met the requirements of another hearsay exception." (citations omitted) (emphasis in original)

2d 698, 702–05 (E.D. Va. 2004).[2]  As germane to this pleading, this Court explained that (1) "a

custodian also must have knowledge of the procedures under which the record was created (2) that

"the proffered record was made *and kept* as a regular practice,[3] and that if a record passes from

one entity to another "as to each participant in a chain of the communication, the document is a

business record."  More specifically, the Court observed as follows:

> The custodian also must have knowledge of the procedures under which the record was created. *See, Porter,* 821 F.2d at 977. The Seventh Circuit likewise has concluded that the "qualified witness" requirement is not a stringent one, but has emphasized that nonetheless "the business records exception *does* require that the witness have knowledge of the procedure under which the records were created." *Collins v. Kibort,* 143 F.3d 331, 338 (7th Cir.1998) (emphasis added). In *Collins,* the district court had disqualified a custodian who had testified merely that "the exhibits she gather[ed] and submit[ted] ... are taken from the records of [the company] which it is in the regularly practice of [the company] to make," noting that, "I cannot infer from [her] affidavit that she has knowledge of the procedures governing the *creation* of a record." *McKay v. Town & Country Cadillac, Inc.,* 2002 WL 318295, at *1 (N.D.Ill.2002). The Seventh Circuit affirmed because the affidavit failed to establish that the affiant was knowledgeable about how the record was created.
> . . .
> The declarations from NEC Electronics, Elpida Memory, and Toshiba are actually made by a custodian, but the custodian does not purport to be familiar with the record-keeping system of the company. In the Kellogg declaration from IBM, the declarant even admits that he has no knowledge of the record-keeping system. The declarant merely explains that it was *his* practice to take notes at meetings, but that he is not aware of any record keeping policy of IBM that relates to the retention of such notes.
>
> As Fourth Circuit precedent makes clear, the custodian or qualified witness must not only be familiar with the maintenance of the records, but also with how they are created. While the bar for qualification as a custodian or qualified witness is not high, these twelve declarations clearly fall far short of it by failing to meet the threshold "qualified witness" requirement of Rule

---

[2] *Rambus* appears to be an authoritative national opinion.  It is fortuitous that this opinion originated out of this Court, applying Fourth Circuit law.

[3] Rule 803(6)(B) requires "the record was *kept* in the course of a regularly conducted activity" of while Rule 803(6)(C) requires that "*making* the record was a regular practice of that activity.

902(11).

. . .

The third requirement of Rule 902(11) is that the record must be "kept in the course of the regularly conducted activity." This requirement reflects the very basic principle that the "mere presence of a document ... in the retained files of a business entity do[es] not by itself qualify that document as a record of regularly conducted activity." *White Indus., Inc. v. Cessna Aircraft Corp.,* 611 F.Supp. 1049, 1059 (W.D.Mo.1985) (citing *Standard Oil Co. of Calif. v. Moore,* 251 F.2d 188, 215 n. 34 (9th Cir.1957)). This simply means that the particular record must be kept as part of the usual course of business.

. . .

There is also another impediment to admissibility that appears in several of the declarations because they address records that, although in the files of the Rule 902(11) declarant's company, are not shown by the declaration to be the records of that company. Of course, "[t]here is not a requirement that the records have been prepared by the entity that has custody of them, as long as they were created in the regular course of some entity's business." 5 Weinstein's Federal Evidence, § 803.08[8][a]. However, it is also true that:

> To satisfy Rule 803(6) [and Rule 902(11) ], each participant in the chain which created the record—from the initial observer—reporter to the final entrant—must generally be acting in the course of the regularly conduct business. If some participant is not so engaged, some other hearsay exception must apply to that link of the chain.

Weinstein § 803.08[2]. Because Rule 902(11) contains the same requirements as Rule 803(6)*, a declaration under 902(11) must demonstrate that, <u>as to each participant in a chain</u> of the communication, the document is a business record.*

On this point, the Fourth Circuit has held that "[i]f the supplier of the information does not act in the regular course, an essential link is broken; the assurance of accuracy does not extend to the information itself, and the fact that it may be recorded with scrupulous accuracy is of no avail." *Rowland v. Am. Gen. Finance Inc.,* 340 F.3d 187, 194–95 (4th Cir.2003). The Fourth Circuit also has explained that "[w]hen the source of the information in the business record is an outsider, the only way to save the record from the jaws of the hearsay exclusion is to establish that the business recipient took precautions to guarantee the accuracy of the given information ... Thus, [the company] must have been able in some way to verify the information provided." *United States v. Pendergrass,* 1995 WL

56673 (4th Cir.1995) (unpublished) (internal citations omitted).[4]

The defense addresses the certificates one set at a time.

1. <u>Google Records—Certificates at Bates 2570-74, 3057-58, 3075-77, 3162-63 are Admissible, Underlying Records not Admissible until Trial. *See* Exhibit A.</u>

   a.  There is a Proper Certification under 28 U.S.C. § 1746

The records provide that "pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge."

   b.  There is no evidence it is Google's "standard practice to verify the information provided."

While much of the information in the records might be property admissible as a business record under Rule 902(11), there is certain information that is not. As an example, the records contain unverified information such as the names "Jake Acc," "Cannon Furr," "The Clam," and "Miscapalap Peepee," which the government knows to be false and inauthentic names. *See*, *e.g.* Bates 2585, 3063, 3176, 3178. *See* Exhibit B. There are other fields which contain information which Google does not verify and for which there is no indication it is Google's "standard practice to verify." Therefore, while the *certificate* is proper and admissible, the underlying records

---

[4] *See also Fambrough v. Wal-Mart Stores, Inc.*, 611 F. App'x 322, 329 (6th Cir. 2015) ("'Rule 803(6) does not require that the document actually be prepared by the business entity proffering the document ... [and] would allow an incorporated document to be admitted based upon the foundation *testimony of a witness* with first-hand knowledge of the record keeping procedures of the incorporating business, even though the business did not actually prepare the document.' *Air Land Forwarders, Inc. v. United States,* 172 F.3d 1338, 1343 (Fed.Cir.1999) (collecting cases). Courts have also stressed that the documents should have 'other assurances of reliability.' *Id.* However, Wal–Mart and Cash Depot can incorporate documents prepared by third-party subcontractors into their business records, only *through foundation testimony of the record keeping practices that establish such incorporation and reliance. See id.* The record does not indicate that Wal–Mart and Cash Depot regularly kept and relied upon records form third-party businesses or that Lam or Heiser had any knowledge about how such record keeping was done.") (emphasis in original).

themselves are not "self-authenticating" and cannot be admitted until the government lays a proper foundation at trial, using the certificate alongside other evidence under Rule 901(a) to provide a foundation for that unverified information.

    c.   The Certification Meets the Requirements of Rule 803(6)(A)-(C).

The certifications are proper. The certifications observe that the custodian is "qualified to authenticate the records because I am familiar with how the records were created, managed, stored, and retrieved." The custodian observes that the "data is kept in the course of its regularly conducted activity" and that it separately "was made by regularly conducted activity." Further the records were made by Google and not by some other company. Therefore the certificates are permissible in this case.

2.  <u>Charter Communications-Certificates at Bates 3143, 3153 are Admissible, Underlying Records not Admissible until Trial.</u> *See* <u>Exhibit C.</u>

    a.   There is a Proper Certification under 28 U.S.C. § 1746

The records provide that "pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge."

    b.   There is no evidence it is Google's "standard practice to verify the information provided."

The custodian herself includes with the certificate an advisement that the company's "billing and customer records from which the above information is obtained are subject to human error and Charter *cannot always guarantee the accuracy of such records*. You should not rely on this information and should independently corroborate the information Charter provides with other information regarding the identity of the individual." *See* Exhibit D. Therefore, again, while the *certificate* is proper and admissible, the underlying records themselves are not "self-authenticating" and cannot be admitted until the government lays a proper foundation at trial, using

the certificate alongside other evidence under Rule 901(a) to provide a foundation for that unverified information.

    c. The Certification Meets the Requirements of Rule 803(6)(A)-(C).

The certifications are proper. The certifications represent that an awareness by the custodian that the "records were generated by Charter Communications by an electronic process or system that produces an accurate result. She further remarks that the "records are kept in the ordinary course of the regularly conducted business activity." Finally, these records were made by Charter and not some other company. Therefore, the certificates are permissible in this case.

3. <u>Verizon Records—Bates 847, 2552—Certificate Inadmissible, Underlying Records Inadmissible.</u> *See* <u>Exhibit E.</u>

    a. There is no certification under 28 U.S.C. § 1746, or any other statute or Rule.

The certification is inadequate as it is not a properly sworn declaration and does not contain the phrase "under penalty of perjury."

    b. There is no evidence it is Verizon's "standard practice to verify the information provided."

Much of the information contained within the document is not "properly understood as records of a regularly conducted activity under Rule 803(6)" such that they qualify for self-authentication under Rule 902(11) as there is no evidence it is Verizon's standard practice to verify information it receives from other entities, such as Google in this case. And even if this were *Verizon's* information rather than *Google's,* the record is still inadmissible under Rule 902(11) and must instead be admitted under 901(a) because the information includes, among other such data, provided names, birthday, email addresses and phone numbers, without any indication that such information is ever verified.

c. <u>The Certification Does Not Meet the Requirements of Rule 803(6)(A)-(C).</u>

Finally, the record is inadmissible as it fails to meet the requirements of the Federal Rules for two reasons. First, unlike the two sets of certifications above, this certificate does not contain any attestation that the custodian has knowledge of the procedures under which the record was created. As observed by *Rambus*:

> As Fourth Circuit precedent makes clear, the custodian or qualified witness must not only be familiar with the maintenance of the records, but also with how they are created. While the bar for qualification as a custodian or qualified witness is not high, these twelve declarations clearly fall far short of it by failing to meet the threshold "qualified witness" requirement of Rule 902(11).

Secondly, the certificate fails under the "outside problem" identified in *Rambus*. The Verizon custodian cannot (and in this case did not) offer any evidence that Google's recordkeeping procedures as concerns the records attached comply with the mandates of Rule 803. *Fambrough v. Wal-Mart Stores, Inc.*, 611 F. App'x 322, 329 (6th Cir. 2015) ("'Rule 803(6) does not require that the document actually be prepared by the business entity proffering the document ... [and] would allow an incorporated document to be admitted based upon the foundation testimony of a witness with first-hand knowledge of the record keeping procedures of the incorporating business, even though the business did not actually prepare the document.' *Air Land Forwarders, Inc. v. United States,* 172 F.3d 1338, 1343 (Fed.Cir.1999) (collecting cases). Courts have also stressed that the documents should have 'other assurances of reliability.' *Id.* However, Wal–Mart and Cash Depot can incorporate documents prepared by third-party subcontractors into their business records, only *through foundation testimony of the record keeping practices that establish such incorporation and reliance. See id.* The record does not indicate that Wal–Mart and Cash Depot regularly kept and relied upon records form third-party businesses or that Lam or Heiser had any

knowledge about how such record keeping was done.") (emphasis in original). As such, the records are also inadmissible on this ground.

4. CashApp Records—Bates 3046, 3211—Certificates Inadmissible, Underlying Records Inadmissible. *See* Exhibit F.

a. There is no certification under 28 U.S.C. § 1746, or any other statute or Rule.

The certification is inadequate as it is not a properly sworn declaration and does not contain the phrase "under penalty of perjury."

b. There is no evidence it is Verizon's "standard practice to verify the information provided"

While much of the information in the records might be property admissible as a business record under Rule 902(11), there is certain information that is not. For instance, some of the information is user provided, and in this case, at Bates 3045, the Display Name is listed as "Jake Imgood," an obviously false and inauthentic name. *See* Exhibit G. Therefore, the underlying records themselves are not "self-authenticating" and cannot be admitted.[5]

c. The Certification Does Not Meet the Requirements of Rule 803(6)(A)-(C).

Finally, the records are inadmissible as they fail to meet one of the requirements of the Federal Rules. Unlike the first two sets of certifications, this certificate does not contain any attestation that the custodian has knowledge of the procedures under which the record was created.

---

[5] As a separate point, there are explanatory, testimonial documents included alongside the business records at Bates 3212 and 2047. *See* Exhibit H. These were provided in addition to the business records themselves. As noted by Cashapp "Block personnel have conducted a search of Block's systems based on the information provided in the subpoena. That search resulted in two accounts. Enclosed please find records of all requested information for the requested time frame." The letter then says at Bates 3213, "Please *also* find a ReadMe document that will assist you in reading the provided documents." The government's motion is unclear on whether it is only seeking to introduce the business records, or also the additional, testimonial, explanatory document. That document would be separately objectionable on Confrontation Clause grounds.

As observed by *Rambus*:

> As Fourth Circuit precedent makes clear, the custodian or qualified witness must not only be familiar with the maintenance of the records, but also with how they are created. While the bar for qualification as a custodian or qualified witness is not high, these twelve declarations clearly fall far short of it by failing to meet the threshold "qualified witness" requirement of Rule 902(11).

5. <u>Twitter Records Certified by Marcella Barretto—Certificate at Bates 2433-2434, is Admissible, Underlying Records Admissible.[6] *See* Exhibit I.</u>

   a. There is a Proper Certification under 28 U.S.C. § 1746

The records provide "I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge."

   b. There is no evidence it is Twitter's "standard practice to verify the information provided."

While much of the information in the records might be property admissible as a business record under Rule 902(11), there is certain information that is not. As an example, the records contain potentially unverified information such as phone number. *See* Exhibit J. An attached explanatory document provides that there is a "phone number currently associated with the account if a phone number has been provided." This indicates that a phone number is not part of the registration or verification process. Therefore, while the *certificate* is proper and admissible, the underlying records themselves are not "self-authenticating" and cannot be admitted until the government lays a proper foundation at trial, using the certificate alongside other evidence under

---

[6] There are two sets of Twitter certificates, one from Marcella Barreto, and one from Kelly Killen. The analysis for the two groups is very different, and they are addressed separately.

Rule 901(a) to provide a foundation for that unverified information.[7]

     c.   The Certification Meets the Requirements of Rule 803(6)(A)-(C).

The certification is proper. The certifications observe that the custodian is "qualified to authenticate the records because I am familiar with how the records were created, managed, stored, and retrieved." The custodian observes that the "data is kept in the course of regularly conducted activity" and that it separately "was made by Twitter as a regular practice." Further the records were made by Twitter and not by some other company. Therefore this particular Twitter certificate is permissible in this case.

6.   <u>Twitter Records Certified by Kelly Killen—Certificates at Bates 4353-55 are Inadmissible, Underlying Records Inadmissible.</u> *See* <u>Exhibit K.</u>

For context, the defense notes that these certifications relate to an unusual situation. The records at issue appear to have been destroyed by Twitter. Twitter is therefore not providing the records at issue. Instead, the certificates purport to discuss the alleged contents of records which might have previously been in Twitter's custody three years prior to the certification written by Ms. Killen.

     a.   There is an improper Certification under 28 U.S.C. § 1746

The records provide for a declaration subject to the penalties of perjury narrowly in the State of Texas, and not at the federal level. As such, they do not meet the requirements of 28 U.S.C. § 1746.

     b.   There is no evidence it is Twitter's "standard practice to verify the information

---

[7] As a separate point, there are explanatory, testimonial documents included alongside the business records. *See* Exhibit J. These were provided in addition to the business records themselves, and reference Twitter's "Guidelines for Law Enforcement." The government's motion is unclear on whether it is only seeking to introduce the business records, or also the additional, testimonial, explanatory document. That document would be separately objectionable on Confrontation Clause grounds.

provided."

A large volume of these records contain messages and conversations which cannot be admitted until the government lays a proper foundation at trial under Rule 901(a) to provide a foundation for that unverified information.

    c.   The Certifications do not Meet the Requirements of Rule 803(6)(A)-(C).

The certifications are highly improper. These certifications relate to information that appears to have been destroyed by Twitter. Twitter is therefore not providing the records at issue. Instead, the certificates purport to discuss what records might have previously been in Twitter's custody three years prior to the certification written by Ms. Killen. As an initial matter, the certificates fail because they do not discuss the records as having been "kept in the ordinary course." And that makes sense, since they were not kept in the ordinary course—instead they were deleted. The second problem is that Ms. Killen does not express any familiarity with how Twitter creates and maintains records, let alone express familiarity with how Twitter did so three years ago. As such, the certificates fail the basic requirements of Rule 902(11) and are not admissible.

    d.   Additional Grounds for Inadmissibility

Unlike all of the records above, these records contain numerous additional reasons why they fail. One reason is that the author of these certificates is testifying to her interpretation of certain internal records by affidavit, rather than providing the actual records. The certificates all begin by stating "According to internal records . . ." However, the custodian does not include these internal records—she provides an analysis, interpretation, and opinion about their meaning. A certificate written in this unusual manner violates the rules against hearsay, the Confrontation Clause, and the Best Evidence Rule. As noted in *United States v. Talar*, 74 M.J. 821, 824–25 (A. Ct. Crim. App. 2015):

We determine that allowing a records custodian to swear to and certify information as to what her databases "reflect" without calling that custodian to the stand and without introducing the actual data, screen shot, print-out, or record which "reflects" the relevant information implicates not only confrontation problems, but hearsay and best evidence hurdles as well.

. . .

This very scenario was discussed in *Melendez–Diaz v. Massachusetts* and ruled to be impermissible.

> The dissent identifies a single class of evidence which, though prepared for use at trial, was traditionally admissible: a clerk's certificate authenticating an official record—or a copy thereof—for use as evidence. But a clerk's authority in that regard was narrowly circumscribed. He was permitted to certify to the correctness of a copy of a record kept in his office, but had no authority to furnish, as evidence for the trial of a lawsuit, his interpretation of what the record contains or shows, or to certify to its substance or effect…

557 U.S. 305, 322–23, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009) (internal citations and internal quotation marks omitted) (emphasis in original).

Accordingly, Ms. CV could authenticate the underlying documents over which she was a proper custodian. But, she could not create the cover letter for purposes of trial and therein provide testimony regarding her interpretation of whatever it is that she reviewed when conducting her "auditing application." Portions of the cover letter were not an appropriate certification of an underlying business record.

. . .

Because portions of Ms. CV's affidavit, as discussed, went beyond authentication of existing business records and into the realm of creating and providing testimony against appellant, those same portions which violated appellant's confrontation rights were also statements "offered in evidence to prove the truth of the matter asserted" and did not qualify under any exception to the hearsay prohibition. Mil. R. Evid. 801(c); *see also* Mil. R. Evid. 803(6). Similarly, without the benefit of being able to view whatever screen, data field, or record that Ms. CV viewed in order to create her testimonial affidavit, the panel was deprived of the best evidence of the contents of that writing—that is, the writing itself.

Further, as noted in *Talar*, the United States Supreme Court clearly specified what a certificate may contain in *Melendez-Diaz*:

> a clerk's authority in that regard was narrowly circumscribed. He was *permitted to certify to the correctness of a copy of a record kept in his office,*

but had no authority to furnish, as evidence for the trial of a lawsuit, his interpretation of what the record contains or shows, or to certify to its substance or effect

*Id.* at 324, 129 S.Ct. 2527. Here, the certificate goes beyond merely "certify[ing] the correctness of a record kept in his office." It includes a testimonial interpretation of the undisclosed internal records, which in her opinion suggest that "X Corp. sent records" to NCMEC. It also contains a testimonial interpretation of what NCMEC did, based upon the undisclosed internal records: "X Corp.'s report was assigned the CyberTip Number 158436793." Additionally, it provides an incomplete testimonial summary of the records, noting they "*include* the following filenames . . ." But the parties must guess as to what else the records may or may not include, since no records were provided with the certificate.

In addition to the three problems identified in *Talar*, (Confrontation Clause, Hearsay, and Best Evidence), the certificate is testimonial and improper because it is not "routine." In this case, rather than simply request that Twitter provide the records at issue, the email correspondence in this case reflects that the government requested a special certificate in this case. In its request for a special certificate, the government wrote to Twitter ("X") as follows:

> I got your name and email address from my colleague, SSA Beth Creed. She mentioned you recently *helped her with a similar issue I'm experiencing*, so I'm hoping you can help me as well. Here's my scenario:
> . . .
> By the time the case was referred to me, X no longer possessed the content of the accounts. I obtained the contents of the accounts from NCMEC, placed them on a drive, and obtained a search warrant for those files. I then reviewed the contents of the accounts. However, because I obtained these files in this way, I don't have a certificate of authenticity from X for the files. I'm trying to obtain *such a certificate* for all three productions in order to avoid having to call a live witness from X to our trial.

*See* Exhibit L. Agent Lee requested that Twitter "help with" this "issue" and to produce "such a certificate" as might help accommodate the unusual situation. The certificate ultimately

produced is very different than the other certificates provided by Twitter ("X") in discovery. *See* Exhibit M. This is not a "routine certification." *United States v. Weiland,* 420 F.3d 1062, 1077 (9th Cir.2005) (holding that "a routine certification by the custodian of a domestic public record ... and a routine attestation to authority and signature ... are not testimonial in nature." ); *United States v. Ellis*, 460 F.3d 920, 927 (7th Cir. 2006) (permitting admission where the certificate is "nothing more than the custodian of records . . . attesting that the submitted documents are actually records kept in the ordinary course of business at the hospital. . . [which] merely establish the existence of the procedures necessary to create a business record.").[8]

7. <u>NCMEC Records—Certificate at Bates 4391-94 is Inadmissible, Underlying Records Inadmissible.</u> *See* <u>Exhibit N.</u>

Again, and for context, the defense notes that this certification relates to an unusual situation. The records at issue appear to have been destroyed by Twitter. A copy of the records (a .zip file) purporting to be the same records is alleged to be the possession of NCMEC. We understand the government is not seeking to introduce through the NCMEC certificate any additional records NCMEC created, nor any testimonial/hearsay remarks made to NCMEC by Twitter when it provided the .zip files. The government is seeking to introduce the .zip files allegedly sent by Twitter to NCMEC in 2023, to establish chain of custody. NCMEC is a chain of custody witness.

---

[8] *Cf. United States v. Hajbeh*, 565 F. Supp. 3d 773, 776–77 (E.D. Va. 2021) (affidavit suffers from "the essential feature which renders the affidavits and underlying extractions "testimonial" under the Confrontation Clause: Agents Kochy and Coonie prepared those documents for the purpose of an impending criminal prosecution. *See Crawford*, 541 U.S. at 52, 124 S.Ct. 1354. And whether the affidavits are directly presented to the jury or simply serve the purpose of placing alleged images and videos of child pornography before the jury with the understanding that they are authentic files from Defendant's iPhones, they would serve an important role in establishing the Government's case against Defendant.").

a. There is a Proper Certification under 28 U.S.C. § 1746

The declaration states "I declare under penalty of perjury that the foregoing is true and correct to the best of my information and belief." As such, it meets the requirements of 28 U.S.C. § 1746.

b. There is no evidence it is NCMEC's "standard practice to verify the information provided."

A large volume of these records contain messages and conversations which cannot be admitted until the government lays a proper foundation at trial under Rule 901(a) to provide a foundation for that unverified information.

c. The Certifications do not Meet the Requirements of Rule 803(6)(A)-(C).

This certificate does not contain any attestation that the custodian has knowledge of the procedures Twitter uses to create its records. As observed by *Rambus*:

> As Fourth Circuit precedent makes clear, the custodian or qualified witness must not only be familiar with the maintenance of the records, but also with how they are created. While the bar for qualification as a custodian or qualified witness is not high, these twelve declarations clearly fall far short of it by failing to meet the threshold "qualified witness" requirement of Rule 902(11).

As such, NCMEC cannot authenticate Twitter's records.[9]

---

[9] *See also Fambrough v. Wal-Mart Stores, Inc.*, 611 F. App'x 322, 329 (6th Cir. 2015) ("'Rule 803(6) does not require that the document actually be prepared by the business entity proffering the document ... [and] would allow an incorporated document to be admitted based upon the foundation *testimony of a witness* with first-hand knowledge of the record keeping procedures of the incorporating business, even though the business did not actually prepare the document.' *Air Land Forwarders, Inc. v. United States,* 172 F.3d 1338, 1343 (Fed.Cir.1999) (collecting cases). Courts have also stressed that the documents should have 'other assurances of reliability.' *Id.* However, Wal–Mart and Cash Depot can incorporate documents prepared by third-party subcontractors into their business records, only *through foundation testimony of the record keeping practices that establish such incorporation and reliance. See id.* The record does not indicate that Wal–Mart and Cash Depot regularly kept and relied upon records form third-party businesses or that Lam or Heiser had any knowledge about how such record keeping was done.") (emphasis in original).

d. Additional Grounds for Inadmissibility

The business records exception simply does not fit this situation—as the .zip file was *made* by Twitter, it was not *made* by NCMEC, even if it was *kept* by NCMEC. NCMEC is simply part of the chain of custody. The government may not avoid providing a testimonial chain of custody witness at trial in this situation.

It is also worth observing that because of NCMEC's unique status, it must provide witnesses in Court. As an initial matter, NCMEC is either a government or quasi-government entity. As noted by Judge (now Justice) Gorsuch in *United States v. Ackerman*, 831 F.3d 1292, 1296–300 (10th Cir. 2016):

> NCMEC's law enforcement powers extend well beyond those enjoyed by private citizens—and in this way it seems to mark it as a fair candidate for a governmental entity. NCMEC's two primary authorizing statutes—18 U.S.C. § 2258A and 42 U.S.C. § 5773(b)—mandate its collaboration with federal (as well as state and local) law enforcement in over a dozen different ways, many of which involve duties and powers conferred on and enjoyed by NCMEC but no other private person. For example, NCMEC is statutorily obliged to operate the official national clearinghouse for information about missing and exploited children, to help law enforcement locate and recover missing and exploited children, to "provide forensic technical assistance ... to law enforcement" to help identify victims of child exploitation, to track and identify patterns of attempted child abductions for law enforcement purposes, to "provide training ... to law enforcement agencies in identifying and locating non-compliant sex offenders," and of course to operate the CyberTipline as a means of combating Internet child sexual exploitation. 42 U.S.C. § 5773(b). Responsibilities and rights Congress has extended to NCMEC alone "under Federal law" and done so specifically "to assist or support law enforcement agencies in administration of criminal justice functions." *Id.* § 16961(a)(1). This special relationship runs both ways, too, for NCMEC is also empowered to call on various federal agencies for unique forms of assistance in aid of its statutory functions. *See* 18 U.S.C. § 3056(f) (authorizing the U.S. Secret Service to provide, "at the request of" NCMEC, "forensic and investigative assistance in support of any investigation involving missing or exploited children").
>
> Focusing in particular on NCMEC's CyberTipline functions, the functions at issue in this case, illustrates and confirms the special law enforcement

duties and powers it enjoys. First, NCMEC and NCMEC alone is statutorily obliged to maintain an electronic tipline for ISPs to use to report possible Internet child sexual exploitation violations to the government. Under the statutory scheme, NCMEC is obliged to forward every single report it receives to federal law enforcement agencies and it may make its reports available to state and local law enforcement as well. *See id.* § 2258A(c).

Second, ISPs must report any known child pornography violations to NCMEC. Not to any other governmental agency, but again to NCMEC and NCMEC alone. ISPs who fail to comply with this obligation face substantial (and apparently criminal) penalties payable to the federal government. *Id.* § 2258A(a)(1), (e); *see also* Child Exploitation & Obscenity Section, *Frequently Asked Questions (FAQs)*, U.S. Dep't Just., https://www.justice.gov/criminal-ceos/frequently-asked-questions-faqs (last visited July 7, 2016) ("If the ISP knowingly and willfully fails to report the apparent violation, it is subject to criminal penalties.").

Third, when NCMEC confirms it has received a report the ISP must treat that confirmation as a request to preserve evidence issued by the government itself. *Compare* 18 U.S.C. § 2258A(h)(1) ("[T]he notification to an [ISP] ... by the CyberTipline of receipt of a report ... shall be treated as a request to preserve, as if such request was made pursuant to section 2703(f)."), *with id.* § 2703(f)(1) ("A[n ISP] ..., upon the request of a governmental entity, shall take all necessary steps to preserve records and other evidence in its possession...."). Failure to comply again opens an ISP to potential civil or criminal sanctions. *See id.* § 2258B.

Fourth, in aid of its tipline functions NCMEC is statutorily authorized to receive contraband (child pornography) knowingly and to review its contents intentionally. *Id.* § 2258A(a), (b)(4); NCMEC Amicus Br. at 20-21. Actions that would normally subject private persons to criminal prosecution. *See* 18 U.S.C. § 2252A(a)(2) (knowing receipt or distribution); *id.* § 2252A(a)(5)(B) (knowing possession or access with intent to view). But actions that Congress allows NCMEC to take precisely because of the unique value it provides in the prosecution of child exploitation crimes. *See* R. vol. 3 at 198-99. Of course, Congress also provides that ISPs who forward and preserve images of child pornography in accord with the law may not be prosecuted. *See* 18 U.S.C. § 2258B(a). But this insulates ISPs only when they do what any private citizen who discovers apparent child pornography might without inviting a real risk of criminal prosecution: pass evidence along to law enforcement and comply with its preservation instructions. All quite unlike NCMEC, which (again alone) enjoys the right to receive child pornography knowingly and review it intentionally.
. . .
In the face of so much law and evidence suggesting NCMEC qualifies as a

governmental entity, the government offers almost no reply. In fact, its only response is to question whether the question is properly before us. According to the government, when Mr. Ackerman was before the district court he argued merely that NCMEC is a governmental *agent* and failed to argue that NCMEC is also a governmental *entity*. As a result, the government suggests, any "entity argument" is waived. Of course, Mr. Ackerman avidly disputes the government's assessment and submits that he pursued both an agent and an entity theory before the district court. But who is right about this much doesn't much matter.

Further, the United States Supreme Court has held that:

> Documents kept in the regular course of business may ordinarily be admitted at trial despite their hearsay status. See Fed. Rule Evid. 803(6). *But that is not the case if the regularly conducted business activity is the production of evidence for use at trial.* Our decision in *Palmer v. Hoffman,* 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943), made that distinction clear. There we held that an accident report provided by an employee of a railroad company did not qualify as a business record because, although kept in the regular course of the railroad's operations, it was "calculated for use essentially in the court, not in the business." *Id.,* at 114, 63 S.Ct. 477. The analysts' certificates—like police reports generated by law enforcement officials—do not qualify as business or public records for precisely the same reason. See Rule 803(8) (defining public records as "excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel").

*Bullcoming v. New Mexico*, 564 U.S. 647, 669–70, 131 S. Ct. 2705, 2720, 180 L. Ed. 2d 610

(2011). As noted in *United States v. Goodwater*, No. ACM 40304 (F REV), 2024 WL 4867142,

at \*4 (A.F. Ct. Crim. App. Nov. 22, 2024):

> NCMEC was the initial reporting agency to law enforcement, not the social media platform. The report served as the reporting mechanism to law enforcement which triggered the criminal investigation in this case. In the absence of evidence to the contrary, it is hard to see this report as something other than a consolidation of evidence reported directly to law enforcement for the purpose of proving a past event potentially relevant to later criminal prosecution. *See Bullcoming*, 564 U.S. at 659 n.6, 131 S.Ct. 2705.

Other cases are in agreement. *See, e.g. United States v. Juhic*, 954 F.3d 1084, 1089 (8th Cir. 2020);

*United States v. Mayer*, No. 19-CR-0096 (WMW/HB), 2021 WL 2434121, at \*7–8 (D. Minn. June

15, 2021)*; United States v. Cameron*, 699 F.3d 621, 650–52 (1st Cir. 2012).  The import of the above authority is clear—if the government wants to use NCMEC to establish chain of custody, it must call a witness from NCMEC.

Additionally, aside from the underlying materials, the certificate itself prepared by NCMEC goes "beyond authentication of existing business records" and into the realm of creating and providing testimony against appellant.  *Talar*, 74 M.J. at 824–25.  Under *Melendez-Diaz*: "a clerk's authority in that regard was narrowly circumscribed. He was permitted to certify to the correctness of a copy of a record kept in his office." *Id.* at 324, 129 S.Ct. 2527.  Here, the certificate goes outside the bounds permitted by *Melendez-Diaz* and contains such statements as follows: "NCMEC's mission is to help find missing children, reduce child sexual exploitation, and prevent child victimization."  It provides that "NCMEC created the ECD  . . . in furtherance of its private mission to serve."  It provides that "The CyberTipline was created to allow persons to report online (and via toll-free telephone) the enticement of children for sexual acts, child sexual molestation, child pornography, child sex tourism, child sex trafficking, unsolicited obscene materials sent to a child, misleading domain names, misleading words or digital images on the Internet."  The certificate is full of statements like this that "go beyond certifying a record kept in their office."

NCMEC is either a government entity or government agent.  Additionally, it is in the business of producing evidence for use at trial. And it neither has (nor represents that it has) any knowledge about how Twitter creates and maintains Twitter's records.  For all these reasons, the government must call a witness from NCMEC to establish chain of custody in this case.

<u>CONCLUSION</u>

For the foregoing reasons, the defense requests that the Court deny the government's omnibus motion.

Respectfully submitted,

**MATTHEW BECKER**

_____/s/_____
Cary Citronberg, VSB #81363
Johnson/Citronberg P.L.L.C.
Counsel for Defendant
421 King Street, Suite 505
Alexandria, VA 22314
(703) 684-8000 (Office)
(703) 504-8933 (Cell)
cary@jc-attorney.com

## <u>CERTIFICATE OF SERVICE</u>

I, hereby certify, that on this 23rd day of June, 2026, I filed the foregoing motion electronically through ECF, which shall provide service on all parties.

_____/s/_____
Cary Citronberg, VSB #81363